# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, <br>     Plaintiff, <br><br> v. <br><br> PRO INSTALLS APPLIANCE INSTALLATIONS, INC., <br>     Defendant. | CV 18-2212 DSF (SPx) <br><br> Order GRANTING in Part Plaintiff's Motion for Default Judgment (Dkts. 44, 45) |

    The Construction Laborers Trust Funds for Southern California Administrative Company (Plaintiff) moves for default judgment against Defendant Pro Installs Appliance Installations, Inc. in its action under the Employee Retirement Income Security Act (ERISA). Dkts. 44 (Notice of Mot.), 45 (Mot.). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The motion is GRANTED in PART.

## I. Background

    Plaintiff is an administrator and fiduciary of the Laborers Health and Welfare Trust Fund for Southern California, the Construction Laborers Pension Trust for Southern California, the Construction Laborers Vacation Trust for Southern California, and other plans (collectively, the Trust Funds) that exist pursuant to § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and are governed by ERISA. Dkt. 1 (Compl.) ¶ 2. The Trust Funds are employee benefit

plans that provide employees with fringe benefits, including health insurance, pensions, and vacation pay. Dkt. 46 (Kilada Decl.) ¶ 5. Defendant is a California corporation with its principal place of business in Ontario, California. Compl. ¶ 3.

The Trust Funds are funded by employers pursuant to the terms of collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local unions (collectively, Laborers Union). Compl. ¶ 4; Kilada Decl. ¶ 5. The collective bargaining agreements – which incorporate the trust agreements that created the Trust Funds – are known as the Construction Master Labor Agreements (the Labor Agreements). Compl. ¶¶ 4-5; Kilada Decl. ¶ 5. In December 2015, Defendant became bound to the Labor Agreements by signing the Laborers Union's Short Form Agreement, which incorporates by reference the Labor Agreements. Kilada Decl. ¶ 19; Dkt. 46-13 (Ex. G.1, Short Form Agreement). At the same time, Defendant entered into a Memorandum of Agreement with the Laborers Union which establishes additional terms concerning the installation of private residential and commercial appliances and related equipment. Compl. ¶ 4; Dkt. 46-14 (Ex. G.2, Memorandum of Agreement).

Under the Labor Agreements, Defendant is required to submit monthly fringe benefit contributions to the Trust Funds on behalf of its employees who perform work covered by the Labor Agreements. Compl. ¶ 6. Defendant must also submit a monthly report to the Trust Funds "listing the employees who performed Covered Work, the hours of such work performed by each, and the resulting amount due." Kilada Decl. ¶ 8; Compl. ¶ 7. For late or unpaid monthly contributions, the Labor Agreements assess liquidated damages against Defendant of the greater of $25.00 for each delinquent contribution or 20% of the amount of the delinquent contribution. Compl. ¶ 8; Kilada Decl. ¶ 14; Dkt. 46-9 (Ex. E.1, 2015-18 Damages Provision); Dkt. 46-10 (Ex. E.2,

2018-22 Damages Provision).[1]  The Labor Agreements also provide for the recovery of the Trust Funds' attorneys' fees and costs in collecting employer delinquencies.  Kilada Decl. ¶ 15; Dkt. 46-11 (Ex. F.1, 2015-18 Fees Provision); Dkt. 46-12 (Ex. F.2, 2018-22 Fees Provision).

The Labor Agreements require Defendant to subcontract covered work "only to entities that are also signatory to a Construction Master Laborer Agreement applicable to the work performed."  Kilada Decl. ¶ 9; Dkt. 46-5 (Ex. C.1, 2015-18 Subcontracting Provision); 46-6 (Ex. C.2, 2018-22 Subcontracting Provision).  If Defendant subcontracts covered work to a non-union entity, it is required "to submit payment to the Trust Funds of an amount equal to the Monthly Contributions, interest, and liquidated damages that would have been due if the entity had been signatory [to a Construction Master Laborer Agreement]."  Kilada Decl. ¶ 9.

The Labor Agreements provide the Trust Funds with "specific authority to examine [Defendant's] payroll and business records."  Compl. ¶ 12.  If an audit reveals that the employer has been delinquent in its monthly contributions, it is required to pay the Trust Funds' audit fees.  Kilada Decl. ¶ 12; Dkt 46-7 (Ex. D.1, 2015-18 Audit Provision); Dkt. 46-8 (Ex. D.2, 2018-22 Audit Provision).

Plaintiff alleges that it reviewed Defendant's monthly reports and identified thousands of dollars in unpaid and late-paid monthly contributions during the period of May 2017 through August 2018, in violation of the Labor Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.  Compl. ¶ 15.  A subsequent audit of Defendant's books through 2019 revealed further breaches of the Labor Agreements going back to December 2015, including more unpaid monthly benefit contributions and work improperly subcontracted to non-union entities.  Kilada Decl.

---

[1] One agreement, the Laborer's Contract Administration Trust Fund for Southern California, assesses liquidated damages at the greater of $20 or ten percent of the delinquent contribution.  Compl. ¶ 8.

¶ 21.D.  Plaintiff also alleges that Defendant failed to produce its books and records for an audit.  Compl. ¶ 19.

Plaintiff filed its Complaint on October 17, 2018.  Defendant was served with the Summons and Complaint on October 28, 2018, see Dkt. 9, and has not responded.  The clerk properly entered Defendant's default on December 12, 2018.  Dkt. 13.

In all, Plaintiff seeks a total of $1,882,712.39:

- Unpaid contributions: $936,340.38 in unpaid benefit contributions, along with prejudgment interest of $136,981.49;

- Audit fees: $6,400.00;

- Subcontracting Violations: $570,903.80;

- Liquidated Damages: $191,167.52; and

- Attorneys' Fees and Costs: $40,919.20

Mot. at 19-20; Kilada Decl. ¶14.  Plaintiff also seeks injunctive relief ordering Defendant to (1) comply with its obligations to produce its records for an audit covering January 2020 to the present and (2) "submit timely monthly fringe benefit reports and contributions to the Trust Funds."  Mot. at 20; Compl. ¶¶ 18-25.

## II. Jurisdiction

Where, as here, "entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject matter jurisdiction over this action pursuant to ERISA.  See 29 U.S.C. §§ 1132(e)-(f), 1451(c).  Plaintiff does not address whether the Court may exercise personal jurisdiction over Defendant.  Although ordinarily personal jurisdiction is a defense that may be waived, it may not be presumed where a plaintiff seeks default judgment.  See In re Tuli, 172 F.3d at 712 ("A judgment entered

without personal jurisdiction over the parties is void."). The Court has personal jurisdiction because Defendant is a California corporation. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) (identifying place of incorporation as a basis for the exercise of general jurisdiction).

### III. Legal Standard

Rule 55(b)(2) permits the Court to enter a default judgment. The Court need not make detailed findings of fact in the event of default. Adriana Int'l Corp. v. Theoren, 913 F.2d 1406, 1414 (9th Cir. 1990). On entry of default, well-pleaded allegations in the complaint regarding liability are generally deemed to be admitted. DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007). Allegations as to damages, however, must be proven. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

The Court considers several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of the money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### IV. Discussion

#### A. The Eitel Factors Weigh in Favor of Granting Default Judgment

##### 1. Prejudice to Plaintiff

If Plaintiff's motion is not granted, Plaintiff "will likely be without other recourse for recovery" and will suffer prejudice if default is not entered. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant cannot escape liability by refusing to

participate in the judicial process and Plaintiff has incurred expenses in prosecuting this action.

### 2. Merits of Substantive Claims and Sufficiency of the Complaint

The second and third factors require a plaintiff to "state a claim upon which [it] may recover." Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003). Employers who contribute to a multiemployer plan under a collective bargaining agreement must make plan contributions in accordance with the terms of the plan or collective bargaining agreement. 29 U.S.C. § 1145; see also 29 U.S.C. § 1132(a)(3) (authorizing fiduciary of employee benefit plan to bring a civil action to enforce provision of ERISA).

Plaintiff has met its burden. The Complaint and supporting documentation establish that: (1) the Trust Funds are multiemployer plans, (2) Defendant is an employer obligated to pay contributions pursuant to, and otherwise comply with, the Labor Agreements; and (3) Defendant failed to timely pay its monthly fringe benefit contributions, used unauthorized subcontractors, and failed to timely submit its monthly reports in accordance with the terms of the Labor Agreements. See Compl. ¶¶ 1-16; Kilada Decl. ¶¶ 20-21. These allegations are bolstered by evidence from Plaintiff's audit of Defendant's books, uncovered additional evidence of unpaid benefit contributions and improper record keeping. Taken as true, these allegations support a finding that Defendant is liable for unpaid contributions, liquidated damages, and audit fees.

### 3. Money at Stake in the Action

The Court must "assess whether the recovery sought is proportional to the harm caused by defendant's conduct." Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal 2010). Here, Plaintiff seeks damages and injunctive relief that are provided for under ERISA and the Labor Agreements and directly relate to Defendant's conduct. Plaintiff offers the declaration of its Executive Director, Hany Kilada, who oversaw the audit of Defendant's records

6

and explains how Plaintiff calculated Defendant's delinquent monthly payments, subcontractor violations, liquidated damages, and interest and identifies the statutory and contractual bases for the requested damages, attorneys' fees, and costs. Kilada Decl. ¶¶ 5-12, 19-21. This factor weighs in favor of entry of default judgment.

### 4. Possibility of Factual Dispute, Excusable Neglect, and Policy Favoring Decisions on the Merits

By failing to answer the Complaint, Defendant has chosen not to dispute the accuracy of Plaintiffs' factual allegations. The likelihood of excusable neglect is slight. Defendant was served with the Summons and Complaint on October 28, 2018 and has not responded. See Dkt. 11. Defendant has retained counsel in this matter and appeared at several contempt hearings concerning its failure to produce records. See Dkts. 36, 37, 41. Defendant and its counsel were each served with a copy of Plaintiff's motion for default judgment and have not responded. See Mot., Proof of Service. The policy favoring decisions on the merits does not weigh against entry of default judgment where, as here, Defendant's failure to appear has made a decision on the merits impossible.

The Eitel factors weigh in favor of granting default judgment on the ERISA claim.

### B. Damages, Attorneys' Fees, and Costs[2]

Once liability is established in a default situation, the Plaintiff must then establish that the requested relief is appropriate. Geddes v.

---

[2] Plaintiff's Complaint seeks only $8,285.11 in "known" delinquencies at the time of filing – far less than Plaintiff is now requesting. Compl. at 10. Plaintiff does not address whether it may obtain default judgment for more than the amount sought in the Complaint. See Fed. R. Civ P. 54(c) ("A default judgment must not differ in kind from, *or exceed in amount*, what is demanded in the pleadings" (emphasis added)). Nonetheless, the Court concludes that it can.

United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). ERISA mandates that when an employee benefit plan obtains judgment in its favor, the court shall award the plan (1) the unpaid contributions, (2) interest on the unpaid contributions, (3) an amount equal to the greater of the interest on the unpaid contributions, or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (4) reasonable attorneys' fees and costs, and (5) other legal or equitable relief that the court deems appropriate. See 29 U.S.C. § 1132(g)(2). "To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the

---

In addition to the "known" delinquencies, the Complaint sought "any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the Trust Funds as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result of work performed by any subcontractors of the [Defendant] (or lower-tier subcontractors) determined to be due." Compl. at 11. In such cases, where the plaintiff prays for a specific sum along with "additional damages . . . the amount of which w[ill] be proved at trial," the Ninth Circuit has held that default judgment is not limited to the specific number identified in the complaint. Henry v. Sneiders, 490 F.2d 315, 317 (9th Cir. 1974) (upholding default judgment for $235,338.89, which exceeded the $71,243.68 prayed for in the complaint); see also Anunciation v. W. Capital Fin. Servs. Corp., 97 F.3d 1458 (9th Cir. 1996) ("General allegations of damages in a prayer for relief are sufficient to support a default judgment under Rule 54(c), as long as the defendant is given reasonable notice thereby of the potential amount at stake."); Trustees of S. California IBEW-NECA Pension Plan v. Gonzalez Elec., Inc., No. CV 07-01044 MMM (SHx), 2008 WL 11336220, at *3 n.20 (C.D. Cal. Sept. 30, 2008) (awarding damages on default judgment in an ERISA case in excess of the amount sought in the complaint because "Plaintiffs do not request that the court award damages that are different in kind or in excess of those sought in the prayer in their complaint") (collecting cases).

plan must provide for such an award." Nw. Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 257 (9th Cir. 1996).

### 1. Unpaid Benefit Contributions

Plaintiff's damages from unpaid monthly benefit contributions fall into two categories:

**Reported, Unpaid Contributions.** Plaintiff alleges that Defendant "failed to submit Monthly Contributions due by it to the Trust Funds . . . for certain months from May 2017 through August 2018." Compl. ¶ 15. After the Complaint was filed, Plaintiff uncovered additional unpaid contributions: "[F]or each of the months of June 2018 through February 2019 and February 2020, [Defendant] submitted its [] Monthly Report to the Trust Funds disclosing Covered Work performed for which Monthly Contributions were due, but failed to pay any of the corresponding Monthly Contributions." Kilada Decl. ¶ 21.c. Plaintiff supports this claim by providing copies of the monthly reports filed with the Trust Funds detailing the hours worked by covered employees, Dkt. 46-16 (Ex. I, Monthly Reports), along with the declaration of Kilada that "none of the amounts that have come due" under these Monthly Reports "have been paid by [Defendant] or otherwise satisfied," Kilada Decl. ¶ 21. This documentation establishes that Defendant failed to pay benefit contributions due under the Labor Agreements. Plaintiff separately calculated and compiled the unpaid monthly contributions as "Hours Reported Without Payment" on its delinquencies spreadsheet, totaling $11,384.38. See Dkt. 46-15 (Ex. H, Delinquencies Chart) at 1-2.

**Unreported Hours.** Through its audit of Defendant's payroll records, Plaintiff discovered "hours of work performed by [Defendant's] own employees that were not disclosed on the [] Monthly Reports, and for which no Monthly Contributions have been paid to, or otherwise recovered by, the Trust Funds." Id. ¶ 21.D.1. Plaintiff supports this claim with itemized documentation of the unreported hours of work and corresponding unpaid monthly contributions for each covered employee, covering the years 2015 through 2019. Id.; Dkts. 46-18 (Ex.

9

J.2, 2015 Unreported Hours); 46-19 (Ex. J.3, 2016 Unreported Hours), 46-20 (Ex. J.4, 2017 Unreported Hours), 46-21 (Ex. J.5, 2018 Unreported Hours), 40-22 (Ex. J.6, 2019 Unreported Hours). Plaintiff compiled these unreported and unpaid monthly contributions as "Audit Findings for Unreported Hours," on its delinquencies spreadsheet, totaling $924,956. See Delinquencies Chart at 3.

Plaintiff has established that Defendant owes **$936,340.38** in unpaid benefit contributions.

### 2.  Liquidated Damages

Plaintiff seeks $191,167.52 in contractual liquidated damages for unpaid and late-paid contributions. A contractual liquidated damages provision "must meet two conditions for enforceability." Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 217 (9th Cir. 1989). "First, the harm caused by a breach must be very difficult or impossible to estimate. Second, the amount fixed must be a reasonable forecast of just compensation for the harm caused." Id. (citing United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc., 519 F.2d 331, 332 (7th Cir. 1975)).

For late or unpaid monthly contributions, the Labor Agreements assess liquidated damages in the amount of the greater of $25.00 for each delinquent contribution or 20% of the amount of the delinquent contribution. Compl. ¶ 8; Dkt. 46-27 (Ex. L.1, 2015-18 LD Provision); Dkt. 46-28 (Ex. L.2, 2018-22 LD Provision). Plaintiff has adequately established that it is difficult to calculate the harm associated with delinquent or late benefits payments, see Kilada Decl. ¶ 24, and shown that 20% is a reasonable estimate of Plaintiff's "cost of collecti[ng]" payments from delinquent contractors, id. ¶ 25 (documenting Plaintiff's annual average "'cost of collection ratio,' reflecting the cost of collections as a percentage of the amounts collected," at 24.6%).

**Unpaid Contributions.**  Having established that it is due $936,340.38 in unpaid benefit contributions, Plaintiff is also entitled to

10

$186,955.26 in associated liquidated damages.  See Delinquencies Chart at 1-3.[3]

**Late Paid Contributions**.  Plaintiff states that "for the months of May 2017, June 2017, August 2017 through May 2018, and February 2020, [Defendant] remitted the Monthly Contributions it disclosed to be due on its [] Monthly Report late."  Kilada Decl. ¶ 21.c; Compl. ¶ 15.  Plaintiff supports this claim by providing copies of the late-paid monthly reports filed with the Trust Funds detailing the hours worked by covered employees, see Monthly Reports at 1-11, along with a declaration from Kilada that Defendant "remitted the Monthly Contributions it disclosed to be due on [these] Monthly Report[s] late," Kilada Decl. ¶ 21.C.  These monthly reports have been stamped "LATE REPORT" by Plaintiff and indicate the date on which Defendant's late payments were "received" by the Trust Funds.  See, e.g., Monthly Reports at 1.  Kilada further declares that "[i]nterest and liquidated damages came due on those late-paid Monthly Contributions under the terms of the Agreements, none of which has been paid by the Employer or otherwise satisfied."  Kilada Decl. ¶ 21.  Plaintiff calculated and compiled the liquidated damages due on Defendant's late-paid monthly contributions on its delinquencies spreadsheet, totaling **$4,212.26**.  Delinquencies Chart at 1-2.

Accordingly, Plaintiff has established that Defendant owes **$191,167.52** in contractual liquidated damages.

### 3.  Subcontracting Violations

Through its audit of Defendant's books, Plaintiff discovered that, from October 2018 through March 2019, Defendant "did not have employees, but instead treated the persons who performed [its] work as independent contractors."  Kilada Decl. ¶ 21.D.2.  During this time,

---

[3] This amount is slightly less than 20% of the total unpaid benefits because one of the Trust Agreements – the Laborers Contract Administration Trust Fund for Southern California – assesses liquidated damages at the greater of $20 or ten percent of the delinquency.  Kilada Decl. ¶ 14.

"[n]o Monthly Contributions were reported or paid to the Trust Funds for their work for the Employer during the period that they were treated as independent contractors." Id.  This practice violates the subcontracting provision of the Labor Agreements, which requires Defendant to subcontract work "only to entities that are also signatory to a Construction Master Laborer Agreement" and entitles Plaintiff to collect "an amount equal to the Monthly Contributions, interest, and liquidated damages" that would have been due had an authorized subcontractor been used.  Id.; see also 2015-18 Subcontracting Provision; 2018-22 Subcontracting Provision.  To determine the number of hours worked by subcontractors (and the corresponding unpaid monthly contributions), Plaintiff reviewed "invoices issued by the temporary staffing agency" used by Defendant and the 1099 tax forms issued by Defendant to its workers.  Id.; Dkts. 40-23 (Ex. J.7, Staffing Invoices); 40-24 (Ex. J.8, 1099 Summary).  Plaintiff then multiplied the hours of work "by the applicable Monthly Contribution rate under the Master Labor Agreement to determine the amount of Monthly Contributions that would be due for the work if a signatory employer (or an employee of the Employer) had performed the work." Kilada Decl. ¶ 21.D.2.

In all, Plaintiff has established that Defendant owes **$570,903.80** in subcontracting violations.  See Delinquencies Chart at 3.

### 4. Prejudgment Interest

ERISA specifically directs the court to award prejudgment interest on unpaid contributions at either "the rate provided under the plan, or, if none, the interest rate prescribed under [I.R.C. § 6621]. 29 U.S.C. § 1132(g)(2)(B).  The Labor Agreements require Defendant to "pay interest on the delinquent contributions (at a rate set by the Trustees of Trust Funds)."  2015-18 Damages Provision at 2.  Kilada's declaration provides that the "trustees have set that rate at five percent (5%) above the variable prime rate set by the Federal Reserve Board of San Francisco, California," Kilada Decl. ¶ 14, which fluctuates over the course of Defendant's delinquencies from 5.25% to 8.0%, see Delinquency Chart at 1-3.  Plaintiff provides a calculation of interest

12

due for each delinquent payment through the date its motion was filed, May 14, 2020.  Delinquency Chart at 1-3; Kilada Decl. ¶ 21.B.

The Court finds Plaintiffs are entitled to **$136,981.49** in prejudgment interest on the unpaid and late-paid contributions.

### 5.  Audit Fees

Under the Labor Agreements, "any Contractor delinquent in its obligations" must pay Plaintiff's "audit fees."  2015-18 Damages Provision at 2.  Plaintiff "incurred $6,400.00 in audit fees for 80 hours of [work] at $80 per hour, which is its standard rate."  Kilada Decl. ¶ 21.D.2.  Based on a review of the extensive work performed and the reasonable hourly rate, the Court agrees that an award of $6,400.00 for audit costs is appropriate.

### 6.  Attorneys' Fees and Costs

Under ERISA, an award of reasonable attorneys' fees and costs is mandatory.  See 29 U.S.C. § 1132(g)(2)(D); Albertson's, 104 F.3d at 257.  The Labor Agreements further provide for the recovery of attorneys' fees and costs in collecting employer delinquencies and enforcing the terms of Labor Agreements, including the subcontracting and audit provisions.  Compl. ¶¶ 13, 17, 20, 25; Kilada Decl. ¶ 15.

Plaintiff seeks attorneys' fees pursuant to L.R. 55-3, which provides a fee schedule for default judgment actions involving a statute that provides for recovery of attorneys' fees.  Mot. at 10.  Plaintiff also seeks costs of $483.34 for its filing fee and service of process.  Id.; Dkt. 47 (Hutchinson Decl.) ¶ 6.  The Court has awarded default judgment to Plaintiffs in the amount of $1,841,793.19 and calculates the attorneys' fees under L.R. 55-3 to be $40,435.86.  See Local Rule 55-3 (calculating attorneys' fees for judgments exceeding $100,000 at "$5600 plus 2% of the amount over $100,000").  The requested attorneys' fees and costs are reasonable, as the damages directly relate to Defendant's alleged violations of ERISA.  See Carpenters Sw. Admin. Corp. v. Div. Three Constr. Servs., Inc., No. 10-cv-7483 GAF (DTBx), 2011 WL 13217524,

13

at *7 (C.D. Cal. Feb. 28, 2011) (awarding attorneys' fees under Local Rule 55-3 for successful ERISA claim).

Plaintiff is awarded **$40,919.20** in attorneys' fees and costs.

### 7. Injunctive Relief

Finally, Plaintiff seeks injunctive relief under ERISA requiring Defendant to (1) comply with its obligation to produce records from January 2020 to the present for an audit and (2) timely submit its monthly contributions going forward. Mot. at 13-15, 19. Under ERISA, when an employer fails to make required contributions, the court "shall" award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2); see also 29 U.S.C. § 1132(a)(3) (fiduciary may bring action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan").[4]

---

[4] Generally, "[a] plaintiff seeking a permanent injunction must . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). However, "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir. 1983). The Ninth Circuit has not explicitly held that this rule applies to ERISA, but district courts in this Circuit have found that it does. See, e.g., Carpenters Sw. Admin. Corp. v. Max Out, Inc., No. CV 19-6009-DMG (KSX), 2019 WL 7882080, at *1 & n.1 (C.D. Cal. Oct. 25, 2019); Bd. of Trustees v. Wilson 5 Serv. Co., Inc., No. 2:18-CV-09693-AB-SK, 2019 WL 6895984, at *6 (C.D. Cal. June 7, 2019); Constr. Laborers Tr. Fund For S. California Admin. Co. v. Play Smart Surfacing, Inc., No. EDCV 13-00582-

The Labor Agreements obligate Defendant to produce its records for audit. Kilada Decl. ¶¶ 12-13; Dkt. 46-7 (Ex. D.1, 2015-18 Audit Provision); Dkt. 46-8 (Ex. D.2, 2018-22 Audit Provision). Plaintiff has already conducted an audit of Defendant's records covering January 2015 through December 2019, Kilada Decl. ¶ 20; however, Plaintiff does not contend that it requested another audit of Defendant's 2020 records, or that Defendant refused such a request. The Court cannot enjoin Defendant from "violat[ing] . . . the terms of the plan" absent evidence that Defendant violated the terms of the plan providing for an audit. Plaintiff may submit a supplemental brief with additional evidence on this point no later than July 22, 2020. Failure to file by that date will result in the Court entering judgment without the requested relief.

Plaintiff also seeks to enjoin Defendant from continuing to violate 29 U.S.C. § 1145 by failing to make its required monthly contributions. Plaintiff is entitled to the requested injunction. See Gould v. Lambert Excavating, Inc., 870 F.2d 1214, 1217 (7th Cir. 1989) ("ERISA provides for civil enforcement, including an injunction, of an employer's obligations to make contributions to pension plans."); Laborers Fringe Ben. Funds-Detroit & Vicinity v. Nw. Concrete & Const., Inc., 640 F.2d 1350, 1351-52 (6th Cir. 1981) ("a fiduciary of an employee benefit plan can bring an action under ERISA to enjoin a recalcitrant employer from failing to comply with the benefit payment provisions of a labor agreement"); Max Out, 2019 WL 7882080, at *1 ("Plaintiffs are entitled to an injunction requiring [defendant] to satisfy its obligations").

The Court therefore GRANTS, in part, Plaintiff's request for injunctive relief. Defendant, its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, shall deliver, or cause to

---

VAP, 2013 WL 6007594, at *6 (C.D. Cal. Nov. 12, 2013). The Court agrees that Plaintiff need not meet the traditional four-factor test for obtaining a permanent injunction. Section 1132(a)(3)(a) explicitly authorizes courts "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."

be delivered, to the Trust Funds' offices no later than 4:30 p.m. on the 15th day of each month for the duration of the Southern California Master Labor Agreement:

> (1) Truthfully and accurately completed monthly fringe benefit contribution reports covering all of the Employer's accounts with the Trust Funds in existence at the time of delivery, collectively identifying all of the Defendant's employees for whom fringe benefit contributions are owed to the Trust Funds for work the previous month and their Social Security numbers, and, itemized by employee and project, the hours of work performed for which the fringe benefit contributions are due;

> (2) An affidavit or declaration from a managing officer or other managing agent of the Defendant attesting under penalty of perjury to the completeness, truthfulness and accuracy of each monthly fringe benefit contribution report submitted; and

> (3) A cashier's check or checks made payable to the "Construction Laborers Trust Funds for Southern California" totaling the full amount of fringe benefit contributions owed by the Defendant to the Trust Funds for work the previous month (as set forth on the fringe benefit contribution report(s) submitted).

## V. Conclusion

Plaintiff's motion for default judgment is GRANTED in part. Plaintiff's request for $1,882,712.39 in damages, comprised of $936,340.38 in unpaid benefit contributions, $570,903.80 in subcontracting violations, $191,167.52 in liquidated damages, $6,400 for audit fees, prejudgment interest of $136,981.49, and $40,919.20 in

attorneys' fees and costs, is GRANTED.[5] The Court further orders the permanent injunctive relief described in the previous section (IV.B.7).

The Court defers ruling on Plaintiff's request for an injunction compelling Defendant to submit its records for audit pending the filing of Plaintiff's supplemental brief. Plaintiff is further ORDERED to provide an amended proposed judgment along with its supplemental brief containing updated prejudgment interest calculations, no later than July 22, 2020. If Plaintiff does not supplement its motion by that date, the Court will enter final judgment in accordance with this order.

IT IS SO ORDERED.

Date: June 23, 2020

*Dale S. Fischer*
Dale S. Fischer
United States District Judge

---

[5] This monetary award shall not, and does not, have *res judicata* effect, operate as a bar or effect any other limitation of any right of Plaintiff or the Trust Funds to determine and collect any amount due, or that comes due, by Defendant to any one or more of the Trust Funds for any month after December 2019.